07 CV 3857

# JUDGE ROBINSON

John Galligan, Esq. (JG-1589)
Cozen O'Connor
Attorneys for Plaintiff
45 Broadway, 16th Floor
New York, New York 10006
(212) 908-1276

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ENCOMPASS INSURANCE COMPANY, as subrogee of
Juan Polanco and Martina Fernandez,

|                                   |                              |
|-----------------------------------|------------------------------|
|                        Plaintiff, | CIVIL ACTION NO.:            |
|                                   |                              |
|              -against-            | **COMPLAINT**                |
|                                   |                              |
| DE LIMA CONTRACTORS, INC., GENE DE OLIVEIRA, |                   |
| Individually, and d/b/a OLIVEIRA CONTRACTING, |                  |
| and ALBERT PALANCIA AGENCY, INC., | Jury Trial Demanded          |
|                                   |                              |
|                       Defendants. |                              |

------------------------------------------------------------------------X

Plaintiff, Encompass Insurance Company, as subrogee of Juan Polanco and Martina

Fernandez, by and through its attorneys, Cozen O'Connor, complaining of defendants De Lima

Contractors, Inc., Gene De Oliveira, Individually, and d/b/a Oliveira Contracting, and Albert

Palancia Agency, Inc., does hereby allege the following upon information and belief:

## THE PARTIES

1.    Plaintiff, Encompass Insurance Company as subrogee of Juan Polanco and

Martina Fernandez (hereinafter "Encompass") is a corporation duly organized and existing under

the laws of the State of Illinois, having its principal place of business located at 3075 Sanders

Road, Northbrook, Illinois 60062.

2.    At all times relevant hereto, Plaintiff, Encompass, was authorized to conduct business as an insurance company in the State of New York, including the issuing of policies of insurance.

3.    At all times relevant hereto, Plaintiff's subrogors, Juan Polanco and Martina Fernandez, also known as "Martina Polanco"(hereinafter, collectively, "Plaintiff's insureds" or "the Polancos") were and are adult individuals and citizens of the State of New York, having a place of residence located at 58 Sylvan Road, Port Chester, New York, 10573.

4.    At all times relevant hereto, Defendant, De Lima Contractors, Inc., (hereinafter "De Lima") was and is a domestic corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 237 Irenhyl Avenue, Rye Brook, New York, 10573.

5.    At all times relevant hereto, Defendant, De Lima, was engaged in the construction business as a general contractor in the State of New York.

6.    At all times relevant hereto, Defendant, Gene De Oliveira, also known as "Jean De Oliveira" and/or "Jean Olivera", was and still is an adult individual who was and is a citizen of the State of Connecticut, having a last known place of residence at 23 Harold Avenue, Greenwich, Connecticut, 06830

7.    At all times relevant hereto, Defendant, Gene De Oliveira, was and still is doing business as and through Oliveira Contracting.

8.    At all times relevant hereto, Defendant, Gene De Oliveira, individually and doing business as Oliveira Contracting (hereinafter, collectively "Oliveira"), was and still is engaged in the construction business as a contractor.

9.     At all times relevant hereto, Defendants De Lima and Oliveira performed construction and/or renovation work on residential properties located in the State of New York.

10.     At all times relevant hereto, Defendant, Albert Palancia Agency, Inc., (hereinafter "Palancia") was and is a domestic corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 116 Mamaroneck Avenue, Mamaroneck, New York 10543.

11.     At all times relevant hereto, Defendant, Palancia, was engaged in the business of retail brokerage and placement of insurance, including the issuance of certificates of insurance.

## JURISDICTION AND VENUE

12.     The jurisdiction of this court is invoked pursuant to 28 U.S.C. §1332 as this action is between citizens of different states and the amount in controversy, exclusive of interest and the costs of the action, exceeds the sum of Seventy-Five Thousand Dollars, ($75,000.00).

13.     Venue is proper pursuant to 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district and the defendants are subject to personal jurisdiction within this district.

## FACTUAL ALLEGATIONS

14.     Plaintiff repeats each and every allegation contained in those paragraphs of the Complaint marked and numbered "1" through "13", inclusive, with the same force and effect as though fully and at length set forth herein.

15.     At all times relevant hereto, Plaintiff's insureds were the owners of real and personal property located at 58 Sylvan Road, Port Chester, New York 10573 (hereinafter, the "Subject Premises").

16.    At all times relevant hereto, the Plaintiff provided property insurance coverage to Plaintiff's insureds pursuant to Policy Number 187013034 (hereinafter "Subject Policy"), which insured the Polancos' real and personal property located at the Subject Premises.

17.    At all times relevant hereto, the Subject Policy insured the Polancos' real and personal property from damage caused by, inter alia, water, including the reimbursement of additional living expenses incurred as a result of the subject premises being rendered uninhabitable as a result of water damage.

18.    On or about June 3, 2004, the Polancos entered into a written construction and/or home builders contract (hereinafter referred to as the "Contract") with Defendant Oliveira and/or De Lima related to the construction of an additional second floor at the Subject Premises, including the demolition, renovation and installation of materials at the Subject Premises and provided labor at the Subject Premises.

19.    Under the terms of the contract, which is attached hereto, the Defendant Oliveira and/or Defendant De Lima agreed to demolish the existing second floor, remove roofing, construct new dining room framing and construct a new roof.

20.    Prior to July 12, 2004, Defendant Oliveira and/or Defendant De Lima performed work at the Subject Premises pursuant to the Contract, including the removal of the roof.

21.    At all times relevant hereto, Defendant De Lima and/or Defendant Oliveira represented that they were competent and experienced contractors, knowledgeable regarding the proper materials and methods of construction such as that contracted for by the Plaintiff's insureds.

22.     On or about June 7, 2004, Defendant Palancia issued a certificate of liability insurance (hereinafter "the Certificate") related to work to be performed pursuant to the Contract at the Subject Premises.

23.     The Certificate represented that Defendant De Lima maintained a Commercial General Liability Insurance Policy with Atlantic Casualty Insurance Company, policy number L08200370, effective from August 28, 2003 to August 28, 2004, with a policy limit of $2,000,000.00 per occurrence.

24.     Prior to July 12, 2004, Defendant Palancia gave, offered and/or issued the Certificate to Defendant De Lima and/or Defendant Oliveira related to work to be performed at the Subject Premises pursuant to the Contract.

25.     Prior to July 12, 2004, Defendant Oliveira secured, received and/or obtained the Certificate from Defendant Palancia and/or De Lima.

26.     Prior to July 12, 2004, the Defendant De Lima knew or reasonably should have known that Defendant Oliveira was using the Certificate to perform home improvements in Westchester County and/or to perform construction work at the Subject Premises.

27.     Prior to July 12, 2004, Defendant De Lima consented, permitted and/or lent its license and/or the Certificate to Defendant Oliveira or failed to take action to prevent Defendant Oliveira from representing to the Polancos that it had an appropriate license and/or the insurance coverage set forth in the Certificate.

28.     Prior to July 12, 2004, Defendant De Lima consented, permitted and/or allowed Defendant Oliveira to file the Certificate with the Village of Port Chester in order to obtain and secure the issuance of Building Permits for the construction work set forth in the Contract or failed to take adequate steps to prevent Defendant Oliveira from filing the Certificate.

29.    Prior to July 12, 2004, Defendant Oliveira and/or Defendant De Lima filed the Certificate with the Village of Port Chester in order to obtain and secure the issuance of Building Permits for the construction work set forth in the Contract.

30.    Prior to July 12, 2004, Defendant Oliveira was an agent and/or subcontractor and/or subsidiary and/or employee of Defendant De Lima.

31.    Prior to July 12, 2004, the Polancos paid good and valuable consideration to the Defendants, complied with all of the terms and conditions of the Contract and relied on Defendant's agreements, representations, promises and documents.

32.    On or about June 21, 2004, the Building Department for the Village of Port Chester issued a building permit related to the work to be performed in the Contract.

33.    At all times relevant hereto, including July 12, 2004, Defendant Oliveira and/or Defendant De Lima performed work at the Subject Premises pursuant to the Contract and had exclusive control over the construction work that was being performed at the Subject Premises.

34.    On or about July 12, 2004, a large quantity of water entered into the Subject Premises as a result of a foreseeable and/or predicted rainstorm (hereinafter "the Subject Incident").

35.    The rainwater infiltrated the Subject Premises as a direct and proximate result of the Defendants' negligent and improper construction work, and/or failure to properly secure tarps over the exposed areas of the roof and/or take other precautions to protect the Subject Premises.

36.    As a direct and proximate result of the aforesaid negligence and water infiltration, the Polancos suffered damage and destruction to their property in an amount in excess of two hundred three thousand, two hundred and seventy-five dollars ($203,275.00).

37.    Pursuant to the terms and conditions of the Subject Policy, Plaintiff paid the Polancos an amount in excess of two hundred three thousand, two hundred and seventy-five dollars ($203,275.00) for reimbursement of the cost of repairing, the remediation of mold and replacing the property that was damaged and for additional living expenses incurred.

38.    By virtue of the aforesaid payments and pursuant to the terms of the aforesaid insurance policy, the Plaintiff, Encompass, became subrogated, to the extent of its payments, to the Polancos' rights of recovery and is therefore entitled to recover the same amount from the Defendants in this action.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

## AGAINST DEFENDANTS DE LIMA AND OLIVEIRA

39.    Plaintiff, Encompass, repeats each and every allegation contained in those paragraphs of the Complaint marked and numbered "1" through "38" inclusive, with the same force and effect as though fully and at length set forth herein.

40.    The Subject Incident and the resulting severe and substantial water damages sustained by the Polancos were directly and proximately caused by the negligence, recklessness, carelessness and/or negligent acts and/or omissions of Defendant De Lima and/or Defendant Oliveira, their agents, servants, subcontractors and/or employees in:

(a)    failing to properly secure tarps over the exposed roofing area of the Subject Premises during a rainstorm;

(b)    leaving large gaps between tarps covering the exposed roof;

(c)    failing to prevent water from infiltrating the Subject Premises during the performance of work pursuant to the Contract;

(d)   permitting mold growth and/or other damage to the Subject Premises during the performance of work pursuant to the Contract;

(e)   failing to properly and adequately perform construction work at the Subject Premises;

(f)   failing to perform construction work in accordance with customary industry and trade practice.

(g)   failing to hire and/or employ competent agents, servants, employees and/or subcontractors to perform work at the Subject Premises;

(h)   failing to properly train competent agents, servants, employees and/or subcontractors to perform work at the Subject Premises;

(i)   failing and/or omitting to do and perform those things which were necessary in order to preserve and protect the property of Plaintiffs;

(j)   failing to take reasonable action prior to and during a rainstorm so that rainwater would not enter the Subject Premises and cause severe and substantial water damage;

(k)   creating a dangerous condition at the subject premises which Defendants knew or should have known existed and created unreasonable risk of harm to the Subject Premises;

(l)   failing to warn the Polancos of a dangerous condition at the subject premises which Defendants knew or should have known existed and created unreasonable risk of harm to the Subject Premises;

(m)   failing to secure and obtain proper licenses and/or work permits;

(n)   failing to secure and obtain adequate and proper insurance coverage;

(o)   otherwise failing to use due care under the circumstances.

41.   As a direct and proximate result of the Defendants' reckless, careless and/or negligent acts and/or omissions, the Subject Incident occurred and caused severe and substantial water damage to the Polancos' real and personal property.

42.    Pursuant to the terms and conditions of the subject policy, Plaintiff, Encompass paid the Polancos an amount in excess of two hundred three thousand, two hundred and seventy-five dollars ($203,275.00) for reimbursement of the cost of repairing, the remediation of mold and replacing the property that was damaged and for additional living expenses incurred.

43.    By virtue of the aforesaid payments and pursuant to the terms of the aforesaid insurance policy, Plaintiff, Encompass became subrogated, to the extent of its payments, to the Polancos' rights of recovery and is therefore entitled to recover the same amount from the Defendants in this action.

**WHEREFORE**, Plaintiff, Encompass Insurance Company as subrogee of Juan Polanco and Martina Fernandez demands judgment in its favor and against Defendants De Lima and Oliveira in an amount in excess of two hundred three thousand, two hundred and seventy-five dollars ($203,275.00), together with pre-judgment and post judgment interest, attorney's fees, the costs of this suit, and such other relief as this Court may order and deem just and equitable.

## SECOND CAUSE OF ACTION

## NEGLIGENCE

## AGAINST ALL DEFENDANTS

44.    Plaintiff, Encompass, repeats each and every allegation contained in those paragraphs of the Complaint marked and numbered "1" through "43" inclusive, with the same force and effect as though fully and at length set forth herein.

45.    The Subject Incident and the resulting severe and substantial water damages sustained by the Polancos were directly and proximately caused by the negligence, recklessness,

carelessness and/or negligent acts and/or omissions of Defendant De Lima and/or Defendant

Palancia, their agents, servants, subcontractors and/or employees in:

    (a)    improperly generating the Certificate;

    (b)    improperly issuing the Certificate to Defendant Oliveira;

    (c)    improperly lending the Certificate to Defendant Oliveira;

    (d)    improperly obtaining the Certificate;

    (e)    consenting to allow Defendant Oliveira to use the Certificate related to work performed at the Subject Premises;

    (f)    failing to take proper and/or adequate steps to prevent Defendant Oliveira from utilizing the Certificate related to work performed at the Subject Premises;

    (g)    failing to hire and/or employ competent agents, servants, employees and/or subcontractors to perform work at the Subject Premises;

    (h)    failing to take reasonable action to verify whether the person who requested the issuance of the Certificate related to the work performed related to the Contract was authorized to request and/or receive the Certificate;

    (i)    otherwise failing to use due care under the circumstances.

46.    As a direct and proximate result of the Defendants' reckless, careless and/or

negligent acts and/or omissions, the subject roof collapsed and the water intruded, spread and

caused severe and substantial damage to the Polancos' real and personal property.

47.    As a direct and proximate result of the Defendants' intentional, reckless, careless

and/or negligent acts and/or omissions, the Polancos understood that work performed by the

Defendants related to the Contract was covered by the general liability policy described in the

Certificate.

48.    As a direct and proximate result of the Defendants' intentional, reckless, careless

and/or negligent acts and/or omissions, the work performed by Defendants related to the

Contract was not covered by the general liability policy described in the Certificate or any other insurance coverage.

49.     As a direct and proximate result of the Defendants' intentional, reckless, careless and/or negligent acts and/or omissions, there is no general liability insurance coverage related to the Incident and the Polancos were not reimbursed for the resulting severe and substantial damages sustained by their real and personal property.

50.     Pursuant to the terms and conditions of the subject policy, Plaintiff, Encompass paid the Polancos an amount in excess of two hundred three thousand, two hundred and seventy-five dollars ($203,275.00) for reimbursement of the cost of repairing, the remediation of mold and replacing the property that was damaged and for additional living expenses incurred.

51.     By virtue of the aforesaid payments and pursuant to the terms of the aforesaid insurance policy, Plaintiff, Encompass became subrogated, to the extent of its payments, to the Polancos' rights of recovery and is therefore entitled to recover the same amount from the Defendants in this action.

**WHEREFORE**, Plaintiff, Encompass Insurance Company as subrogee of Juan Polanco and Martina Fernandez demands judgment in its favor and against Defendant Palancia and Defendant Oliveira in an amount in excess of two hundred three thousand, two hundred and seventy-five dollars ($203,275.00), together with pre-judgment and post judgment interest, attorney's fees, the costs of this suit, and such other relief as this Court may order and deem just and equitable.

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT

## AGAINST DEFENDANTS DE LIMA AND OLIVEIRA

52.     Plaintiff repeats each and every allegation contained in those paragraphs of the Complaint marked and numbered "1" through "51", inclusive, with the same force and effect as though more fully and at length set forth herein.

53.     As set forth in Paragraph 18, above, Plaintiff's subrogors entered into the Contract with Defendant Oliveira and/or Defendant De Lima.

54.     The construction work at the premises was performed by Defendant Oliveira and/or Defendant De Lima, pursuant to the Contract.

55.     By virtue of the negligent acts and/or omissions set forth in Plaintiff's First Cause of Action, above, Defendant Oliveira and/or Defendant De Lima breached the terms and conditions of the Contract and express and implied warranties therein that the work under the contract would be performed in a proper, safe and workmanlike manner.

56.     As a result of the foregoing breaches, Defendant De Lima and/or Defendant Oliveira directly and proximately caused damage and destruction to Plaintiff's Insureds' real and personal property located at the Subject Premises in an amount in excess of two hundred three thousand, two hundred and seventy-five dollars ($203,275.00), exclusive of interest and the cost of this action.

WHEREFORE, the Plaintiff Encompass demands judgment in its favor and against Defendant De Lima and/or Defendant Oliveira in an amount in excess of two hundred three thousand, two hundred and seventy-five dollars ($203,275.00), together with pre-judgment and

post-judgment interest, attorney's fees, the cost of this suit and such other relief as this Court

deems just and proper.

## FOURTH CAUSE OF ACTION

## MISREPRESENTATION AND FRAUDULENT INDUCEMENT

## AGAINST ALL DEFENDANTS

57.     Plaintiff repeats each and every allegation contained in those paragraphs of the

Complaint marked and numbered "1" through "56", inclusive, with the same force and effect as

though more fully and at length set forth herein.

58.     At the time the contract was made and at all times relevant hereto, the Defendant

Oliveira was and is not licensed to perform home improvements in Westchester County, as is

required by Article XVI or the Westchester County Consumer Protection Code.

59.     Section 863.313-1 of Article XVI specifically prohibits contractors from

performing any home improvements without being licensed and provides:

> No person shall maintain, conduct, advertise, operate or engage in
> a home improvement business within the County of Westchester or
> hold himself or herself out as being able to do so, unless such
> person is licensed pursuant to this Article.

60.     The Westchester County Code, at Section 863.320 further provides for criminal

penalties for violations of its Code in order to enforce the public policy it was intended to

protect:

> Criminal Penalties -- Any person who shall maintain, conduct,
> operate or engage in a home improvement business within the
> County of Westchester without a license as required under this
> Article or who continues to conduct a home improvement business
> after such license has been denied, suspended or revoked or has
> expired shall be guilty of a class A misdemeanor.

61.    At all times relevant hereto, Defendant Oliveira was not authorized to perform services as a licensed home improvement contractor in Westchester County.

62.    Defendant De Lima lent its license to perform home improvements in Westchester County to Defendant Oliveira and/or permitted Defendant Oliveira to use its license to perform home improvements.

63.    Defendant Palancia and/or Defendant De Lima supplied, issued, generated, lent and/or provided a false Certificate of Insurance to Defendant Oliveira.

64.    Prior to July 14, 2004, Defendant Oliveira fraudulently and/or deceptively represented to the Polancos that it was properly licensed and/or insured related to the work to be performed at the Subject Premises pursuant to the Contract.

65.    The Defendant De Lima and/or Defendant Palancia knew or should have known of the deceptive actions, misrepresentations and fraudulent inducements by Defendant Oliveira.

66.    The Defendants, acting in concert with each other, have performed home improvements in the County of Westchester, in violation of the County Code.

67.    The Defendants, individually or collectively, did knowingly engage in a course of conduct or conspiracy intended to deceive and defraud the Plaintiff's insureds into believing that the Defendants and the project were properly licensed and/or adequately and appropriately insured.

68.    The Plaintiff's Insureds relied to their detriment that Oliveira was capable, knowledgeable, competent, licensed and insured and that the work would be performed in accordance with the design plans, construction drawings, New York State and local building codes, local ordinances and in a workmanlike, professional and legal manner.

69.    As a result of the foregoing misrepresentations and fraudulent inducements, the Defendants caused loss to Plaintiff's Insureds' in an amount in excess of two hundred three thousand, two hundred and seventy-five dollars ($203,275.00), exclusive of interest and the cost of this action.

WHEREFORE, the Plaintiff Encompass demands judgment in its favor and against Defendants in an amount in excess of two hundred three thousand, two hundred and seventy-five dollars ($203,275.00), together with pre-judgment and post-judgment interest, attorney's fees, the cost of this suit and such other relief as this Court deems just and proper.

Dated: New York, New York
        May 16, 2007

COZEN O'CONNOR

*Attorneys for Plaintiff*
*Encompass Insurance Company a/s/o*
*Juan Polanco and Martina Fernandez*

BY: _____
     John B. Galligan, Esq. (JBG-1589)
     45 Broadway Atrium, 16th Floor
     New York, New York 10006
     (212) 908-1276

**HOME BUILDERS CONTRACT**

**THIS CONTRACT** entered into this ___ day of May, 2004, by and between JUAN POLANCO (hereinafter referred to as "Owner"), whose present address is: 58 SYLVAN ROAD, PORTCHESTER, NEW YORK 10573 and OLIVEIRA CONTRACTING (hereinafter referred to as "Contractor"), provides as follows:

1.    **LOCATION OF PROPERTY:**    Contractor agrees to construct an additional second floor for Owner on Owner's property located at: 58 SYLVAN ROAD, PORTCHESTER, NEW YORK 10573

2.    **DESCRIPTION OF WORK:**    Contractor agrees to furnish at his expense all labor and materials required to construct an additional second floor and to make other improvements. Specifically, the contractor shall perform the following: a) demolition of existing second floor, removing roofing, remove slab for elevation, reinforce columns in the basement with steel beams; b) new dining room framing including walls, ceilings and headers; c) new roof, including new asphalt, gutter leaders and waterproofing; d) raise chimney to match existing facade; e) interior portions for Cathedral ceiling and plywood; f) build staircase; g) installation of matching existing stucco windows; h) installation of sliding doors (doors to be provided by Owner)   (collectively called "Work") in accordance with certain home plans and specifications, approved and signed by the parties, and made a part hereof by reference. Contractor shall obtain all necessary permits required, shall complete the Work promptly and in a workmanlike manner, and shall obtain any necessary inspections and approvals of the Work. Contractor shall supervise and direct the Work, using his best skill and attention. Contractor shall be responsible to Owner for the acts and omissions of his employees, suppliers, sub-contractors, and their agents and employees, and other persons performing any of the Work under a contract with Contractor. Contractor shall not be responsible for any Work not provided for in the blueprints and specifications, any Work specifically designated in said blueprints or specifications as the responsibility of Owner; and any Work or the consequences of such Work performed by Owner or Owner's agents. Contractor will not be providing work for New Floor, Plumbing or the Electrical.

3.    **CONTRACT AMOUNT & PAYMENT:**    Owner agrees to pay to Contractor for the performance of the Work the sum of: $ 90,000.00 (Ninety Thousand Dollars) payable as follows:

        Owner agree to make progress payments according to the following schedule:

Contract Price less Earnest Money = Net Funds Due.

- $15,000.00 (Fifteen Thousand Dollars) Net Funds Due under this contract upon signing;
- $15,000.00 (Fifteen Thousand Dollars) Net Funds Due when demolition of second floor; roof and slab are completed;
- $15,000.00 (Fifteen Thousand Dollars) Net Funds Due when framing work of second floor is completed;
- $15,000.00 (Fifteen Thousand Dollars) Net Funds Due when installation of roof is completed;
- $15,000.00 (Fifteen Thousand Dollars) Net Funds Due when drywall (partitions) is completed;
- $15,000.00 (Fifteen Thousand Dollars) Net Funds Due when the final building is complete. prior to occupancy subject to satisfactory approval by housing inspector or other required independent or governmental authority. Earnest money payments and progress payments shall be deducted from the amount of the final payment.

4.    **CHANGES OR ADDITIONS:**    Owner agrees that the Contract Price is subject to adjustment to reflect any modification or changes to the plans and/or specifications which may be required by the local building department or other governmental agencies. All changes to the plans and/or specifications necessitated by governmental requirements shall be presented to Owner by Contractor together with the estimated cost of such changes. All of Owner's requests for changes to the plans or specifications after the signing of this Contract shall be submitted by Owner to Contractor for a determination of the feasibility and cost of the requests; such determinations shall be solely vested in Contractor. Owner agrees to make no changes or additional work to the home without the consent of Contractor. Both the Work and the price of any changes shall be approved in writing by both Owner and Contractor before the Work is done or materials are purchased, and the Change Order documenting such changes shall be incorporated as part of this Contract as if fully re-written herein. Any increase in price shall be paid in full by Owner at the time the Change Order is approved; any decrease in price shall be deducted from the next progress payment.  In the event the plans and/or specifications are revised, it is understood and agreed that the last, revised plans and/or specifications approved by Owner shall be the plans and/or specifications governing the Work to be performed by Contractor under this Contract, and Contractor shall not be responsible to perform any labor or supply any materials shown on earlier plans and/or specifications, but not contained in the last, revised approved plans and/or specifications.

5.    **AGENCY:**    If there is more than one Owner of the project the approval or consent of any one Owner to changes or additions to this contract shall be deemed consent on behalf of all of the Owners. No subcontractor shall have the authority to speak for or bind the Contractor under the terms of this contract. All communications with regard to changes or additions shall be made directly through the Contractor and the

Owners shall not give any instruction with regard to changes or additions to this contract to subcontractors directly.

6.    **ALLOWANCES:**    It is the Owner's responsibility to investigate the cost of allowance items prior to the execution of this agreement or prior to selecting a particular predict, color or design. Contractor must inform Owner prior to performing any work or installing any materials covered by an allowance if he reasonably believes that the Owner's choice or the circumstances will lead to the allowance being exceeded. However, there are circumstances where the Contractor may not be aware of the allowance being exceeded until after work on allowance items has commenced due to unforeseen circumstances. In such cases, the Contractor shall notify the owner that the allowance will be exceeded as soon as the Contractor is reasonably aware of that fact.

7.    **SUBSTITUTIONS:**    In the event Contractor is unable to furnish items herein specified, due to discontinuances, shortages, or governmental regulations, Contractor shall be permitted to substitute any of such items without voiding this Contract between Owner and Contractor. In the event of substitution of items, they shall be as near the same quality as will be available at the same costs and Contractor shall notify Owner of the necessity for such substitutions, explain the reasons why such substitutions are necessary, and offer Owner the choice of alternate materials, if such choices are reasonably available. Owner's choice shall not unduly delay the Work, or the proposed completion date shall be extended accordingly. It is understood that Contractor is permitted to install and use new or advanced building materials, improved equipment, and advanced construction technology.

8.    **INSURANCE & LICENSE:**    Contractor shall maintain, and shall require subcontractors to maintain, Worker's Compensation insurance and liability insurance against any claims for damages because of bodily injury or property damage during the progress of the Work. Documentation of such insurance coverage must be furnished to Owner upon signing contract. Contractor shall maintain, and shall require subcontractors to maintain, valid current contractor license and or the like. Documentation of such current license must be furnished to Owner upon signing of contract.

9.    **COMMENCEMENT AND COMPLETION OF WORK:**    Work shall commence within one week of the signing of this contract. Construction shall be completed in the shortest space of time permitted by weather conditions and consistent with good workmanship on the part of all workers and subcontractors employed on the Work. Contractor estimates that the Work will be substantially completed within two

months from the signing of this contract. **Owner acknowledges that no employee, agent, or subcontractor of Contractor is authorized to guarantee a completion or delivery date in any way.** The Contractor will be responsible for any damages or inconveniences caused Owner by failure to complete the house specified herein by the above named date regardless of the reason for such delay, if the delay is caused by the negligence of the contractor or his subcontractors. If Owner supplies any material or work for the home, it will be incorporated and subject to Contractor's standard policy and scheduling. Contractor shall daily, at the end of the day, and at the completion of the Work, remove all rubbish generated by the Work, tools, and surplus materials from the site and the building and shall leave the site and building in a "broom-clean" condition or as stated otherwise in the specifications. The Contractor is responsible for any fines received due to the rubbish from the construction.

**10. DEFECTIVE WORK OR MATERIALS:** No payment made by Owner under this Contract, excepting the final payment made upon completion shall be deemed to be conclusive evidence of performance of this Contract by Contractor, either wholly or in part, against any claims of Owner by reason of any defective work or materials. Contractor shall make any repairs or replacements without charge, in accordance with the written limited warranty given to Owner.

**11. LIENS:** Contractor agrees to keep the property free from any mechanic's liens which may be filed against the property as a result of labor or material used for completion of this Contract by Contractor or Contractor's assigned suppliers and subcontractors. In the event a mechanic's lien is filed with respect to the property, the Contractor shall take prompt steps either for the removal of the mechanic's lien by payment or release of the lien by filing bond in lieu of the mechanic's lien in an amount determined by agreement of the parties, by statute, or by court order. The Contractor shall have no responsibility for liens caused or created by owner or any suppliers or subcontractors which the owner may have directly retained in connection with this construction.

**12. LIMITED WARRANTY:** All Work performed by the Contractor and subcontractors shall have a limited warranty of 2 years. Contractor shall provide to Owner at the time of the final payment, a two year Limited Home Warranty Agreement in effect at the time of the signing of this Contract. Owner acknowledges that the owner has had the opportunity to review this warranty in advance of execution of this Contract, and that Owner understands and approves of the contents of the warranty and acknowledges that the limited warranty to be provided hereunder is the sole and exclusive warranty given by the Contractor to Owner. This warranty is lieu of any and all other warranties including warranties of merchantability or fitness for purpose intended.

**13.    INDOOR AIR QUALITY:**    This addition will be constructed based on generally accepted construction principles and using products and materials that should not, under normal conditions, contribute to indoor air quality problems. The Contractor is responsible for indoor air problems that may be caused by improper operation and maintenance of mechanical equipment, the intrusion or accumulation of moisture or other substances from inside or outside of the building and/or lack of maintenance. The Contractor is not responsible for modification of the building by anyone other than Contractor or sub contractor and any product defect caused in manufacturing such product.

**14.    ACCESS:**    Owner will be responsible to make the home accessible for workers during normal business hours so that the remaining work can be completed. Nothing shall prevent or hinder Owner's right to inspect the progress of Work on a regular and reasonable basis as long as it does not hinder or delay the construction process. Owner assumes all responsibility for his/her/their own personal safety on the job site and the safety of all persons whom they bring or permit onto the job site.

**15.    OWNERSHIP AND USE OF DOCUMENTS:**    All drawings, specifications, and copies thereof furnished by Contractor and/or Owner may be copyrighted by Owner and remain Owner's property. Owners right to use contractor's drawings or specifications are not limited to use in connection with this project. Owner shall have rights to use these drawings or specifications in any other project or to copy and furnish them to any third party in connection with any other project.

**16.    OWNER'S RESPONSIBILITIES:**    Owner shall make any selections of products, patterns, and/or colors to be used in the home according to the selection deadlines established by Contractor. Any delays by Owner in making such selections shall result in the projected completion date being extended accordingly.

**17.    ASSIGNMENTS:**    No assignment by Owner of any rights hereunder or any interest in this Contract shall be binding on Contractor without the written consent of Contractor; specifically, but without limitation, moneys that are due or moneys that may become due may not be assigned without such consent and, unless specifically stated to the contrary in any written consent to an assignment, no assignment will release or discharge the assignor from any duty or responsibility under this Contract.

**18.   MISCELLANEOUS:**     All rights and obligations granted and assumed under this Contract shall apply to the heirs, administrators, partners, successors and assigns of Owner and Contractor. This Contract shall be governed by the laws of the New York.

**20.   THIS IS A LEGALLY BINDING CONTRACT. THE PARTIES ACKNOWLEDGE THAT THEY HAVE HAD THE RIGHT TO SECURE INDEPENDENT LEGAL COUNSEL CONCERNING THIS CONTRACT, AND THEY HAVE CHOSEN TO PROCEED WITH THIS CONTRACT, AND THEY COVENANT THAT THEY DO UNDERSTAND THE TERMS AND CONDITIONS OF THIS CONTRACT. THIS CONTRACT CONSTITUTES THE ENITRE AGREEMENT BETWEEN OWNER AND CONTRACTOR, AND THERE ARE NO ORAL PROMISES OR REPRESENTATIONS CONCERNINGTHE CONSTRUCTION OF THE ADDITION WHICH ARE NOT CONTAINED IN THIS AGREEMENT.   ANY MODIFICATIONS TO THIS AGREEMENT SHALL BE IN WRITING AND SIGNED BY BOTH OWNER AND CONTRACTOR.**

   **IN WITNESS WHEREOF,** the parties named above hereunto set their hands on the day, month, and year first written above.

OLIVEIRA CONTRACTING                        JUAN POLANCO

By:                    06/03/04              By:

Signed in the Presence of:

Witness: _____

Witness: _____